PbahsoN, C. J.
 

 It is not necessary, for the purpose of dis
 
 *301
 
 posing of this case, to decide whether, in reference to grants of this description, all of the requirements of the statute, in. regard to the manner of making the entry — its return to the county eonrt — the order for a survey, and the appointment and report of a jury, should be strictly complied with as a condition precedent on which the validity of the grant is made to depend, according to the law, as settled in reference to the sale of land for taxes, or whether such matters are only
 
 directory,
 
 so that a grant issued by the proper authorities for land, which is the subject of grant, is to be held valid, and cannot be declared void, and of no effect, notwithstanding the requirements of the statutes have not been observed according to the law, as settled in respect to grants issued under the acts in reference to ordinary entries and grants of vacant land.
 

 2. Nor is it necessary to decid® whether a grant, which includes within its boundaries a large scope of country, say ten miles by seven miles square, 45,000 acres, but which, on its face purports to be a grant of 3000 acres of vacant land, the excess, included in the boundaries, being covered by older patents, is in law void, for the want of power in the Governor to issue such a grant. ¥e will take occasion to remark, however, without reference to the question of power, that its exercise leaves open a wide door for the admission of fraud and, certainly, calls for extreme vigilance on the part of the public authorities.
 

 3. Nor is it necessary to decide whether the defendants were guilty of
 
 actual fraud
 
 in obtaining a grant for some 5000 acres more than they claimed to be entitled to. It may be, under the circumstances, that owing to the large scope of country covered by the survey, and the infinite number of tracts .of land held by older grants, embraced wholly, or in part, by the lines'of thesurvéy, they did not know, positively, the fact of this large excess, and were intent only on including, at the least, enough vacant land to fill their complement of 3000 acres, and it is certain the case does not fall under the decision,
 
 Attorney General
 
 v. Garner, 12 Ire. 230; for there, every thing on the face of the survey and plat was
 
 *302
 
 .right, and there was no ground to admit of any doubt or question of its correctness, so far as the papers showed, and the fraud was made palpable by the fact
 
 afterwards disclosed,
 
 that the natural boundaries called for, extended the lines
 
 two miles
 
 instead of 200 poles, on the settled rule, that course and distance are controlled by a call for natural objects as the boundary. This fact, of itself, convicted both the surveyor and the grantee of a fraud, and there could be no mistake about it. But here, the survey and plat show that a large extent of country was included; the surveyor says 83,000 acres of.older patented land is embraced, which being deducted, leaves 8000 acres the subject of the grant; so it does not appear, palpably, that the defendants were aware of the large excess of vacant land, and we should require strong proof to lead us to the conclusion that either the county surveyor, Calloway, or his deputy, McMilla/n, knew of the fraud, if any such existed on the part of the defendants,
 
 and
 
 prostituted themselves in the discharge of the duties of their office, in order to aid the defendants in defrauding tire State out of an indefinite number of acres of land not fit for cultivation, and which was subject to entry at five cents per acre ; not exceeding, at any estimate, the amount of $30.0 as the sum, out of which,'in this view of the case, the State has been defrauded by the corruption, not only of the defendants, but of the county surveyor and his deputy — both sworn officers.
 

 4. For we put our decision on the ground, that the grant was issued against law ; that is, without the authority of the la-w, and in a case that did not come within the operation of the statute of W88, “ to encourage the building of iron-works.” The statute recites “ Whereas, it appears to the General Assembly that
 
 several places,
 
 in this State, are advantageously situated for the building of iron-works,” “Be it enacted that three thousand aci’es of vacan't land, not fit for cultivation,
 
 most convenient to the different seats,
 
 is hereby granted for every set of iron-works,
 
 as a
 
 bounty from this State, to any person or persons, who will build and carry on the same, to be under the following rules and regulations.”
 

 
 *303
 
 It is alleged m the information, and proved by the evidence, that one Oox had, many years ago, built and carried on ironworks at this “ identical seat,” and had, by reason thereof, applied for and obtained a bounty of 3000 acres of vacant land. The question is 5 was this bounty land of 3000 acres append-ant to the
 
 seat of the iron-worlcs,
 
 or was the intention to give a bount}’- of 3000 acres of land to every person, who would, upon that seat, from time to time, build and carry on ironworks? Upon the former construction, when the iron-works should be built"and carried on at the particular seat, the bounty of three thousand acres of land, most convenient to tlie seat, was to be given, and although the bounty land was not annexed to
 
 the
 
 seat, so that the seat could not be conveyed without passing the bounty land, or the bounty land could not be conveyed, wholly or in parcels, without also conveying the seat of the iron-works, still the bounty was exhausted, and could not be claimed in behalf of any other, person who should purchase or otherwise acquire the ownership of the seat, after the bounty land had been severed from it. Upon the latter construction, every person rvho by purchase, descent, or otherwise, might at any time, acquire title to the seat, would be entitled to a bounty of 3000 acres of land; so that all that was necessary to do, in order to acquire a title to another bounty of 3000 acres of land was, for the man, who had obtained the bounty, to let the works go down, and sell ■off the 3000 acres of land,'which had been received as a bounty, and then rebuild and carry on the works long enough to make 5000 lbs. of iron, and thereupon entitle himself to another bounty of 3000 acres of vacant land, not fit for cultivation, “most convenient to the seat;” then let him sell to a stranger the seat for the iron-works after he has ceased carrying on the works, and let the purchaser of the seat rebuild and make 5000 lbs. of iron, and he gets another bounty of 3000 acres of land,
 
 most convenient to the seat,
 
 and so
 
 ad iMimitnm,
 
 until all of the vacant land in the county is absorbed by these successive bounty grants!
 

 This latter construction cannot be adopted, and we hold,
 
 *304
 
 according to the true construction of the statute, the grant of the bounty of 3000 acres of land to Cox, in respect and as ap-pendant to this particular seat, on which he had built and carried on iron-works, exhausted the bounty intended to be giren by the statute, and no one, who afterwards became the owner of the seat, had any right to claim another bounty of another 3000 acres of land. It follows that the grant in question was issued against law, and is, therefore,, void.
 

 Per Curiam, Decree accordingly..